UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re:<br>JAMES COREY GOODE,<br>STACY HARTMAN GOODE,<br><br>Debtors. | Bankruptcy Case No. 25-16569-JGR<br><br>Chapter 13 |
| GAIA, INC.<br><br>Plaintiff,<br>v.<br>JAMES COREY GOODE,<br><br>Defendant. | Adv. Pro. No. 26-01007-JGR |

## COMPLAINT

Plaintiff Gaia, Inc. ("**Gaia**" or "**Plaintiff**"), through its undersigned counsel, as and for its complaint against James Corey Goode, respectfully alleges to this Court as follows:

### PARTIES AND JURISDICTION

1. Plaintiff Gaia is a Colorado corporation with its principal place of business located at 833 W. South Boulder Road, Louisville, Colorado, 80027.

2. Upon information and belief, defendant James Corey Goode is an individual residing at 7356 Park Lane Rd Longmont, Colorado 80503.

3. This adversary proceeding is being brought in connection with defendant's case under Chapter 13 of Title 11 of the Bankruptcy Code, Case No. 25-16569-JGR, now pending in this Court and in which defendant and Stacy Hartman Goode are co-debtors.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 523(a)(2)(A). This is a core proceeding. Plaintiff consents to entry of a final order or judgment by this Court.

## NATURE OF ACTION AND FACTUAL ALLEGATIONS

5. Plaintiff brings this adversary proceeding to deny Mr. Goode the discharge of plaintiff's breach of contract claims. Discharging the claims would reward Mr. Goode for entering into contracts with, and accepting payments from, the plaintiff under false pretenses, upon which plaintiff justifiably relied to its detriment.

6. Gaia is a global conscious media and community company that operates a global digital video subscription service that caters to the "disclosure" community. Gaia is a rapidly growing company with a digital content library of over 8,000 titles available to its subscribers.

7. Mr. Goode owns and operates Goode Enterprise Solutions, Inc. ("**GES**"), a Colorado corporation.

8. As alleged by Mr. Goode in Debtors' Motion to Extend Stay [ECF No. 15], Goode is the principal and majority shareholder of GES.

9. As further alleged by Mr. Goode in Debtors' Motion to Extend Stay [ECF No. 15], GES has no independent operations or assets and Goode is the sole party that can represent GES.

10. As further alleged by Mr. Goode in Debtors' Motion to Extend Stay [ECF No. 15], GES and Goode are "closely related."

11. There is no legal distinction between GES and Mr. Goode, and GES is an alter ego of Mr. Goode.

*Contracts Between the Parties*

12. Gaia and GES commenced their contractual relationship by entering into a Talent Agreement, dated as of June 20, 2015, by and between plaintiff and GES (the "**2015 Contract**"), pursuant to which Mr. Goode agreed to appear on Gaia programming. The 2015 Contract contemplated the production of at least 52 programs, of approximately 30 minutes each (collectively, the "**Programs**," and each, a "**Program**").

13. Pursuant to the 2015 Contract, Mr. Goode agreed to perform on-camera services, attend rehearsals, attend photography, voice-over and "re-take" or "overdub" sessions, consult regarding development and pre-production of Programs, and promote and market the Gaia Programs in which he appeared (collectively, the "**Talent Services**"). In exchange for the above services, Gaia agreed to pay Goode certain fees and expenses.

14. Thereafter, Gaia and GES entered into a second Talent Agreement, dated as of August 22, 2016, by and between Gaia and GES (the "**2016 Contract**"). The 2016 Contract also contemplated that Mr. Goode would provide Gaia with Talent Services, including his appearance in Gaia Programs. (The number of Programs was to be determined based on good faith discussions between the parties). The 2016 Contract was set to end the later of July 31, 2017 and the completion of the agreed Talent Services, and was automatically renewable for successive one-year terms unless terminated by either party. The 2016 Contract contemplated termination for "cause" upon 30 days' written notice ("cause" included failure to perform under the contract as well as making malicious or defamatory statements about Gaia, Gaia-affiliated parties, and the Programs). The 2016 Contract is governed by Colorado law.

3

*August 2017 Amendment and the Advance*

15. The 2016 Contract was renewed by an amendment dated as of August 18, 2017 (the "**August 2017 Amendment**"). Pursuant to the August 2017 Amendment, among other revisions, Gaia agreed to pay $50,000.00 to Mr. Goode in exchange for his appearance at two future live events (the "**Live Events**"). The amendment also contemplated the payment of a $25,000.00 advance for his appearances at the Live Events (the "**Advance**").

16. Gaia paid the Advance to Mr. Goode on or about August 25, 2017.

17. Mr. Goode did not appear at the Live Events for which he received the Advance.

18. Gaia is owed the entirety of the Advance, which was contingent on Mr. Goode's public appearances at the Live Events.

*November 2017 Amendment and the Relocation Payment*

19. Gaia and GES further amended the 2016 Contract on or about November 7, 2017 ("**November 2017 Amendment**" and, together with the August 2017 Amendment, the "**Amendments**"). Pursuant to the November 2017 Amendment, the parties agreed that Mr. Goode would continue performing Talent Services in respect of Gaia Programs (again, in a number of Programs to be determined in good faith discussions). Related thereto and made a part thereof, Mr. Goode (on behalf of himself), executed a Relocation Benefit Agreement, dated as of November 17, 2017, providing the terms pursuant to which Gaia agreed to pay up to $20,000.00 of Mr. Goode's relocation expenses (the "**Relocation Benefit**").

20. The November 2017 Amendment (including the Relocation Benefit Agreement) contemplated that Mr. Goode would not have to repay the Relocation Benefit to Gaia if (and to the extent that) Mr. Goode remained "Under Contract" (as defined below) with Gaia for a period of 36 months from the date of relocation. Mr. Goode was required to repay the Relocation Benefit,

4

on a prorated basis, based on the amount of time in the 36 month period following relocation during which he was not "Under Contract" with Gaia. Gaia was entitled to offset future amounts it owed to Mr. Goode against any portion of the Relocation Benefit that was required to be, but was not, repaid by Mr. Goode to Gaia.

21. "Under Contract" is defined in the Relocation Benefit Agreement to require, *inter alia*, that Mr. Goode appear in at least 360 minutes of published Gaia content per quarter.

22. Upon information and belief, Mr. Goode relocated from Texas to Colorado in or around November 2017.

23. Gaia made two separate payments to Mr. Goode in December 2017, totaling $11,069.62 (collectively, the "**Relocation Payment**" and, together with the Advance, the "**Payments**") (Gaia paid $6,083.62 to Mr. Goode on December 11, 2017 and $4,986.00 on December 18, 2017).

24. For every quarter following the relocation through the termination of the 2016 Contract for cause as of August 12, 2018, Mr. Goode failed to appear in 360 minutes of published Gaia content. Thus, he was not "Under Contract" at all following Gaia's payment of the Relocation Payment, from December 2017 through the termination of the 2016 Contract.

25. Gaia is owed all or (to the extent that other amounts owed from Gaia to Mr. Goode exist that should be offset against the Relocation Payment) a portion of the Relocation Payment, in an amount to be determined at trial.

### *The Fraudulent Misrepresentations and False Pretenses*

26. Plaintiff's decisions to enter into the Amendments and to make the Payments to Mr. Goode were made under false pretenses and based on Mr. Goode's fraudulent misrepresentations.

5

27. During the months prior the payment of the Advance and the Relocation Payment, Mr. Goode induced Gaia to enter into the Amendments and make the Payments by affirmatively representing that he had enough material to continue producing content throughout the agreed contract term and intended to perform his obligations under the Amendments.

28. Specifically, in or around April 2017, Mr. Goode discussed with Gaia production of a new show designed to focus on Mr. Goode's personal experiences ("Above Cosmic").

29. As discussions progressed, on or around July 29, 2017, Mr. Goode represented that he had sufficient material for 38-episodes of Above Cosmic.

30. Mr. Goode also represented that this new material could serve as content for use at future live events.

31. Based, in part, upon Mr. Goode's affirmative representations that he had enough new material for future live events and additional Programs, Gaia was induced to enter into the August 2017 Amendment and pay the Advance.

32. Mr. Goode also induced Gaia to enter into the November 2017 Amendment and make the Relocation Payment by affirmatively representing that he intended to perform his obligations under the November 2017 Amendment, had enough material to develop and produce Above Cosmic throughout the agreed contract term, and that it would be best if he moved to Colorado since he had a lot of content to shoot and would be on-site at Gaia's headquarters in Louisville, CO, to do so. Subsequent to signing the November 2017 Amendment, Mr. Goode duplicatively requested financial contributions from the public to support his relocation to Colorado.

33. However, Mr. Goode could not perform the above-referenced Talent Services at the time that he entered into the Amendments and accepted the Payments. Specifically, as Gaia

would come to learn after agreeing to the Amendments, a pilot was filmed during which Mr. Goode was repeatedly unable to recall his own "story" and required continual prompting from his manager to do so, indicating that the narrative was not based on genuine recollection and was instead mostly fabricated.

34. Shortly following his receipt of the Payments, Mr. Goode failed to appear for scheduled production dates for Gaia Programs, failed to provide truthful content for Above Cosmic, and made false and defamatory comments directed to Gaia and affiliated individuals.

35. Plaintiff justifiably relied on Mr. Goode's representations that he would continue to produce Programs and otherwise perform the Talent Services in deciding to pay the Advance and the Relocation Payment to Mr. Goode.

36. In fact, Mr. Goode could not perform the Talent Services contemplated in the Amendments (including attendance at the Live Events and continued production of Gaia Programs) and knew that did not have enough truthful material to continue making Programs, prior to Gaia making the Advance and the Relocation Payment. However, he misrepresented those facts to induce plaintiff to make the Payments. Plaintiff would not have proceeded with the Amendments, or the Payments, but for Mr. Goode's representations of his ability and intention to continue performing the Talent Services. Thus, plaintiff was induced to enter into the Amendments and make the Advance and the Relocation Payment under false pretenses and based on Mr. Goode's misrepresentations.

37. Shortly after receiving the Relocation Payment, Mr. Goode stopped appearing at production events and stopped performing his other obligations under the Amendments. He also made several defamatory statements about Gaia and affiliated individuals. Mr. Goode's conduct

took plaintiff by surprise. Plaintiff terminated the 2016 Contract on 30 day's written notice, effective on August 12, 2018.

### *District Court Litigation and Chapter 13 Bankruptcy Filing*

38. On March 17, 2020, Mr. Goode and GES commenced a lawsuit against Gaia and other parties asserting a variety of claims, seeking damages and injunctive relief in the U.S. District Court for the District of Colorado. *See Goode v. Rysavy*, Civ. Action No. 20-cv-00742-DDD-KAS (D. Colo. Mar. 17, 2020) (the "**District Court Litigation**"). Gaia counterclaimed against Mr. Goode and GES, asserting claims based on breach of contract (the "**Contingent Contract Claims**"), defamation, trademark infringement, unfair competition, tortious interference, and unjust enrichment. Plaintiff sought an amount to be determined at trial on its Contingent Contract Claims.

39. Mr. Goode and GES's complaint was amended twice, and on March 31, 2024, the court issued an order dismissing Mr. Goode and GES's claims with the exception of a single breach of contract claim against Gaia, which was allowed to proceed on two theories. All of Gaia's counterclaims, including the Contingent Contract Claims, remain pending before the district court.

40. As of the date hereof, discovery is pending in the District Court Litigation.

41. On October 9, 2025 (the "**Petition Date**"), Mr. Goode and his co-debtor Stacy Hartman Goode filed with this Court a voluntary petition for relief under Chapter 13 of the Bankruptcy Code. [ECF No. 1].

42. Gaia filed a proof of claim based on the Contingent Contract Claims against Mr. Goode on December 18, 2025. *See* Proof of Claim No. 5-1.

8

## **FIRST CLAIM FOR RELIEF**

**11 U.S.C. § 523(a)(2)(A)**

43. Plaintiff incorporates paragraphs 1 through 42 above as if set forth at length herein.

44. As a result of the foregoing, Mr. Goode is not entitled to a discharge of the Contingent Contract Claims, insofar as they relate to the Advance and the Relocation Payment.

**WHEREFORE**, plaintiff respectfully requests that this Court enter judgment denying defendant James Corey Goode discharge of the Contingent Contract Claims, insofar as they relate to the Advance and the Relocation Payment, pursuant to 11 U.S.C. § 523(a)(2)(A), together with the costs and disbursements of this action and for such other and further relief as this Court deems just, proper and equitable.

Dated: January 5, 2026
       Centennial, CO                        **MERRICK SHANER & BERNSTEIN, LLC**

                                             By: */s/* Joseph T. Bernstein
                                                    Joseph T. Bernstein
                                                    6300 S. Syracuse Wy.
                                                    Ste. 220
                                                    Centennial, CO 80111
                                                    T: 303-831-9400
                                                    jtb@msbfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above *Complaint* was placed in the U.S. Mail, postage prepaid, or delivered electronically via the Court's Electronic Case Filing system, on January 5, 2026, addressed as follows:

**Debtors**
James Corey Goode and Stacy Hartman Goode
6525 Gunpark Dr
# 370-227
Boulder, CO 80301

**Debtors' Bankruptcy Attorney**
Nicholas Craig Horvath
The Horvath Law Firm, LLC
VIA CM/ECF

**Debtors' Attorney in District Court Litigation**
Valerie Ann Yanaros
Yanaros Law, P.C.
8300 Douglas Avenue Suite 800
Dallas, TX 75225

**Chapter 13 Trustee**
Adam M Goodman
VIA CM/ECF

Dated: January 5, 2026
Centennial, CO

MERRICK SHANER & BERNSTEIN, LLC

By: */s/* Joseph T. Bernstein
Joseph T. Bernstein
6300 S. Syracuse Wy.
Ste. 220
Centennial, CO 80111
T: 303-831-9400
jtb@msbfirm.com

*Attorneys for Gaia, Inc.*