**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

In re:

JAMES COREY GOODE                                    Case No. 25-16569-JGR

STACY HARTMAN GOODE,                                 Chapter 13

                        Debtors.

---

**JOINDER TO CHAPTER 13 TRUSTEE'S OBJECTION TO CONFIRMATION OF SECOND AMENDED CHAPTER 13 PLAN AND MOTION TO DISMISS CHAPTER 13 BANKRUPTCY CASE**

---

Creditors Jirka Rysavy, Kiersten Medvedich (collectively, the "**Gaia Judgment Creditors**") and Gaia, Inc. ("**Gaia**," and together with the Gaia Judgment Creditors, collectively, the "**Gaia Creditors**"), through their undersigned counsel, hereby submit this *Joinder to Chapter 13 Trustee's Objection to Confirmation of Second Amended Chapter 13 Plan and Motion to Dismiss Chapter 13 Bankruptcy Case*.

**BACKGROUND**

1.      On October 9, 2025 ("**Petition Date**"), the above-captioned debtors (the "**Debtors**") filed a joint chapter 13 bankruptcy petition ("**Petition**").  [ECF No. 1].[1]

2.      Debtor James Corey Goode is a self-proclaimed "Secret Space Program whistleblower," *see* http://coreygoode.com, who, according to Mr. Goode, "has experienced increased physical contact with ET & inner earth civilizations that prepared him to be a messenger of the importance of spiritual focus and inner work during Earth's transition into higher density consciousness, which has already begun." *Id*.  Gaia is a global conscious media and community

---

[1] Unless otherwise noted, references to "ECF No. __" refer to Case No. 25-16569-JGR (Bankr. Colo.).

company that operates a global digital video subscription service that caters to the "disclosure" community, which previously entered into certain talent services agreements with Goode Enterprise Solutions, Inc. ("**GES**"), an entity controlled by Mr. Goode.

3. The Gaia Creditors are creditors of the Debtors and their chapter 13 bankruptcy estates. Specifically, the Gaia Judgment Creditors hold a judgment against Mr. Goode, *see* Debtors' Schedule E/F (4.1) [ECF No. 1] at 26, and Gaia has contingent claims against Mr. Goode arising from certain pending claims in the Gaia Litigation, each discussed below.

*The District Court Litigation and Resulting Bankruptcy Court Claims*

4. Prior to the bankruptcy filing, Gaia was named as a defendant in an action filed on March 17, 2020, in the U.S. District Court for the District of Colorado, in which Mr. Goode and GES (collectively, "**Plaintiffs**"), asserted a variety of claims against various parties, seeking damages and injunctive relief. *See Goode v. Rysavy*, Civ. Action No. 20-cv-00742-DDD-KAS (D. Colo. Mar. 17, 2020) ("**Gaia Litigation**"). The complaint was amended twice, including to add the Gaia Judgment Creditors as defendants. On March 31, 2024, the court issued an order dismissing Plaintiffs' claims with prejudice entirely as to the Gaia Judgment Creditors and largely as to Gaia, except for a breach of contract claim against Gaia ("**Mr. Goode's Pending Claim**"), which was allowed to proceed on two theories. Based on the dismissal, the Gaia Judgment Creditors were awarded a judgment for attorneys' fees in the amount of $59,806.00, pursuant to Colorado Revised Statutes §§ 13-17-201 and 13-17-102(3) ("**Judgment**"). *See* Partial Final Judgment, Gaia Litigation (Dec. 6, 2024) [ECF No. 449], *rep. and rec. adopted* (Aug. 14, 2025) [ECF No. 491]. Gaia has also filed counterclaims against Mr. Goode and GES for breach of contract, defamation, trademark infringement, unfair competition, tortious interference, and unjust enrichment, which remain pending before the district court (collectively, "**Gaia's Pending**

2

**Claims**").  In large part, the counterclaims arise out of a concerted scheme by Mr. Goode to defame Gaia and certain of the Gaia Judgment Creditors through a series of online campaigns and social media posts designed to "take down" Gaia after it stopped featuring Mr. Goode in one of its online series.

5.      On December 18, 2025, the Gaia Creditors filed proofs of claim against the Debtors' estate based on the Judgment and Gaia's Pending Claims, respectively.  *See* Proofs of Claim Nos. 3-6.

6.      On January 5, 2026, Gaia filed an adversary proceeding against Mr. Goode, asserting that a portion of Gaia's Pending Claims are non-dischargeable pursuant to section 523(a)(2) of the Bankruptcy Code ("**Adversary Complaint**").  *See* Adv. Pro. No. 26-01007, [ECF No. 1].

7.      Despite several extensions of time to respond to the Adversary Complaint, as detailed in the Plaintiff's Status Report filed in the adversary proceeding, *see id.*, [ECF No. 8] ¶¶ 4-7, Mr. Goode did not respond to the Adversary Complaint, resulting in the Clerk's entry of a default as to Mr. Goode.  *See id.*, [ECF No. 10].[2]

### *Proposed Chapter 13 Plans and Objections*

8.      The Debtors filed their initial chapter 13 plan ("**Initial Plan**") on the Petition Date. [ECF No. 2].

9.      On November 6, 2025, the Standing Chapter 13 Trustee ("**Trustee**") objected to the Initial Plan.  [ECF No. 17].  On November 12, 2025, the Gaia Creditors joined the Trustee's objection to the Initial Plan, asserted additional grounds for denial of plan confirmation, and moved for dismissal of the Debtors' chapter 13 case.  [ECF No. 20].

---

[2] Gaia intends to move for the entry of a default judgment against Mr. Goode with respect to the claim asserted in the Adversary Complaint.

10. The Court issued the *Order Regarding Intended Amended Chapter 13 Plan and Confirmation Status Report* on December 5, 2025, which, *inter alia*, denied confirmation of the Initial Plan, deemed moot the objections thereto, and set a deadline for the Debtors to file an amended plan. [ECF No. 22].

11. The Debtors filed the first amended chapter 13 plan on December 17, 2025 (the "**First Amended Plan**"), [ECF No. 29], along with certain amended schedules and statements. *See* Am. Schedule I [ECF No. 24]; Am. Schedule J [ECF No. 25], Am. Schedule A/B [ECF No. 26], Notice of Amendment of Petition, Lists, Schedules, Statements, and/or Addition of Creditors ("**Notice of Amendment**") [ECF No. 28]. The amended documents, filed just over two months after the initial set, paint a vastly different picture of the Goodes' monthly expenses and income since the Petition Date.

12. The Trustee objected to the First Amended Plan on January 7, 2026. [ECF No. 36]. On January 8, 2026, the Gaia Creditors again joined the Trustee's objection, asserted additional grounds for denial of plan confirmation, and moved to dismiss the chapter 13 case. [ECF No. 37].

13. On January 22, 2026, the Debtors filed the Amended Statement of Financial Affairs ("**Amended SOFA**"), [ECF No. 41], and another Confirmation Status Report ("**CSR**") which, *inter alia*, indicated that the Debtors intended to file a further amended plan and provided commentary on the Gaia Creditors' objections to the First Amended Plan. [ECF No. 44].

14. The next day, the Court issued the *Order Regarding Intended Amended Chapter 13 Plan and Confirmation Status Report*, which, *inter alia*, denied confirmation of the First Amended Plan, mooted the Trustee's and Gaia Creditors' objections thereto, and provided a deadline for the filing of a further amended chapter 13 plan. [ECF No. 46].

15. On February 19, 2026, the Debtors filed a motion to extend the time to file an

amended chapter 13 plan, [ECF No. 48], which the Court granted the next day.  [ECF No. 49].

16.     The Debtors filed the proposed second amended chapter 13 plan on March 5, 2026 ("**Second Amended Plan**").  [ECF No. 51].

17.     On March 23, 2026, the Trustee filed an objection to the Second Amended Plan ("**Trustee Objection**"), on grounds that the Debtors "may not be contributing all projected disposable income to creditors" and that the Second Amended Plan "appears to be infeasible." [ECF No. 53] at 1.

## ARGUMENT

### A.     <u>Joinder and Objection to Second Amended Plan</u>

18.     The Gaia Creditors hereby join the Trustee Objection to the Second Amended Plan and incorporate by reference the entire pleading as if fully restated herein.

19.     The Gaia Creditors further object to confirmation of the Second Amended Plan for the below additional reasons.

20.     <u>First</u>, the Second Amended Plan fails to account for the resolution of Gaia's Pending Claims.  The plan lists the "[t]otal debt and administrative expenses" as $181,350.00, [ECF No. 51] (Part 3.1(G)), but that total does not include the value of Gaia's contingent, unliquidated claims against the Debtors.  *See* Proofs of Claim Nos. 5-1 and 6-1; *see* 11 U.S.C. § 101(5) ("The term 'claim' means—(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . .").  Gaia's Pending Claims must be resolved (or their value estimated, to the extent that "the fixing or liquidation of [Gaia's Pending Claims] would unduly delay the administration of the case," 11 U.S.C. § 502(c)(1)), in order for the proposed plan to account for all of the claims of the Debtors' estate, and thus be included in pro rata distribution

to general creditors.

21.     Second, the Second Amended Plan also does not account for the Clerk's entry of Mr. Goode's default with respect to the claim asserted in Gaia's Adversary Complaint for an order deeming a portion of Gaia's Pending Claims nondischargeable.  See Adv. Pro. No. 26-01007, [ECF No. 10].  As proposed, the Second Amended Plan does not account for any potential liability under the Adversary Complaint, see supra ¶ 20, let alone provide for how such liability will be paid in full in the event a default judgment is entered.

22.     Third, as stated in the Trustee Objection, it is not clear that all of the Debtors' disposable income is contemplated to be contributed to the Second Amended Plan.  In addition to the possible income sources cited in the Trustee Objection, the Gaia Creditors add that the Debtors may receive income from Mr. Goode's operation of the website Ascension Works TV (linked at: https://ascensionworks.tv/).  See Amended Schedule A/B.  [ECF No. 26] (Part 4.35) (listing "Ascension Works TV, LLC" as asset with $300 value in "computers, office furnishings").

23.     Fourth, consistent with the Trustee Objection, the Debtors have not established that they "will be able to make all payments under the plan" based on their reported income and expenses and thus, the proposed plan is not feasible.  11 U.S.C. § 1325(a)(6).  The Debtors reported a net income of $306.21 on Amended Schedule J, [ECF No. 25] (Part 2.23(c)), and the proposed plan contemplates payments of $3,270 per month beginning in the sixth month of plan payments. See Second Amended Plan, (Part 4.1).  To the extent that a significant change in the Debtors' disposable income is anticipated in the upcoming months, the same has not been stated in the Debtors' filings.

24.     Further, the Debtors' filings raise serious questions concerning whether the Second Amended Plan and the Petition were filed in good faith, as required for confirmation by sections

6

1325(a)(3) and 1325(a)(7) of the Bankruptcy Code.[3]

25.     In the Tenth Circuit, when assessing good faith in proposing a plan, "[a] bankruptcy court must consider 'factors such as whether the debtor has stated his debts and expenses accurately; whether he has made any fraudulent misrepresentation to mislead the bankruptcy court; or whether he has unfairly manipulated the Bankruptcy Code.'" *In re Melendez*, 597 B.R. 647, 659 (Bankr. D. Colo. 2019) (quoting *Anderson v. Cranmer (In re Cranmer)*, 697 F.3d 1314, 1319 n.5 (10th Cir. 2012)).

26.     Here, the Debtors have misrepresented their assets and debts:

- Schedule E/F fails to report the contingent liability owing to Gaia arising from Gaia's Pending Claims. *See* Schedule E/F, [ECF No. 1] (Part 2).[4]  Nor does the Second Amended Plan reference or account for those claims. *Supra* ¶¶ 20-21.

- Amended Schedule A/B omits Mr. Goode's Pending Claim as an asset of the Debtors' estate.  *See* Am. Schedule A/B, [ECF No. 26] (Part 4.33-34) (indicating the Debtors do not have any "[c]laims against third parties" or "[o]ther contingent and unliquidated claims of every nature"); *see also* Second Amended Plan (Part 3.2(B)) (excluding Mr. Goode's Pending Claim from liquidation analysis).[5]

27.     In addition, the Debtors appear to have inaccurately represented home expenses and/or business interests during the chapter 13 case.  On December 17, 2025, the Debtors reported

---

[3] The Debtors' lack of good faith in filing the Petition is further discussed *infra* ¶¶ 32-37.

[4] In the CSR, Debtors state that they "disagree with the assertion that Gaia is not listed in Schedule E/F as notice went to their Counsel and as consideration notes 'collection for Gaia individuals.'"  CSR at Part 4. While the Judgment owed to the Gaia Judgement Creditors is accounted for on Schedule E/F, Gaia's Pending Claims held by Gaia are not.  *See* Schedule E/F, [ECF No. 1].

[5] Potentially available business interests are omitted from the plan's liquidation analysis as well. *Id.*

paying $3,575 each month for home ownership expenses that they said cost $0 per month on the Petition Date. *Compare* Am. Schedule J, [ECF No. 25] (Part 2.4) *with* Initial Schedule J (Part 2.4), [ECF No. 1] at 33. The Debtors have since explained that "[a]t the time of filing, the Debtors had a business paying their home living expenses. Since filing, their accountant has advised them to make that a personal expense." CSR at Part 4. The explanation raises questions as to why such business income was not reported on the Petition Date, and which business has been paying such expenses (and based on which assets). *See* Initial SOFA, [ECF No. 1] (Part 2.4) (reporting "$1.00" received from operating a business from January 1, 2025 through the Petition Date); Initial Schedule I, [ECF No. 1] (Part 2) (reporting "$0.00" in gross income). To the extent that Disclosure Media Inc. ("**DMI**") may have been the business making these payments (as the Debtors now report that DMI provides Mr. Goode with regular monthly income of $7,950), the Debtors reported DMI had "[n]o assets" on the Petition Date. Initial Schedule A/B (Part 4.35), [ECF No. 1].[6]

28.     Finally, the Amended Plan fails to meet the requirements of section 1325(a)(4) of the Bankruptcy Code, known as the "best interest of creditors test." As the Second Amended Plan does not provide the estimated value of, or otherwise account for, DMI or other business interests of the Debtors (or Mr. Goode's Pending Claim), it is impossible to determine whether creditors would fare better in a chapter 7 liquidation.

29.     Accordingly, confirmation of the Second Amended Plan should be denied.

---

[6] The Gaia Creditors further note that the Debtors "acknowledge" DMI's interest in a documentary (likely referring to "Beyond Disclosure, The Corey Goode Files") in the January 22, 2026 CSR, and state that "there were no sales" of the documentary as of the Petition Date. CSR, [ECF No. 44] (Part 4). They further posit that "no evidence has been provided that the mere ownership of an interest in a documentary ["Beyond Disclosure, The Corey Goode Files"] creates a value that can be liquidated." CSR, [ECF No. 44] (Part 4). This statement cuts against the Debtors' express assertion that DMI had "[n]o assets" on the Petition Date. Initial Schedule A/B, [ECF No. 1] (Part 4.35).

**B.**     **The Debtors' Chapter 13 Bankruptcy Case Should be Dismissed**

30.     The Debtors' chapter 13 case should be dismissed "for cause." 11 U.S.C. § 1307(c).

31.     <u>First</u>, additional information is required to substantiate the Debtors' eligibility for chapter 13 relief. The Debtors reported that Mr. Goode earns regular monthly income of $7,950 from DMI, *see* Amended Schedule I, [ECF No. 24] (Parts 1-2), but reported that same entity had "[n]o assets, no liabilities" and provided them with no income just months earlier. *See* Initial Schedule A/B, [ECF No. 1] (Part 4.35); Initial Schedule I, [ECF No. 1] (Part 2). The Debtors have since explained that "[s]ince filing, the Debtors have taken efforts to move business forward and have W-2 income." CSR, [ECF No. 44] (Part 4). Pursuant to section 101(30) of the Bankruptcy Code, income must be "sufficiently stable and regular to enable such individual to make payments under a plan under chapter 13 of this title" to constitute "regular income," 11 U.S.C. § 101(30), and "[o]nly an individual with regular income" qualifies for chapter 13 relief. 11 U.S.C. § 109(e). More information is required to establish whether the Debtors' newfound W-2 income from DMI is "sufficiently stable" to meet the eligibility criteria for chapter 13, especially as they still have not estimated the company's value in their schedules or the Second Amended Plan. 11 U.S.C. § 101(30).

32.     <u>Second</u>, as stated above, the Debtors appear to have lacked good faith in filing the Petition. Courts in this District have recognized that, "[a]lthough unenumerated in the statute, a debtor's lack of good faith in filing its bankruptcy petition may serve as 'cause' for dismissal under Section 1307(c)." *In re Plese*, 661 B.R. 143, 156-57 (Bankr. D. Colo. 2024) (citing *Gier v. Farmers State Bank of Lucas, Kansas (In re Gier)*, 986 F.2d 1326, 1329-30 (10th Cir. 1993)).

33.     In assessing a debtor's good faith in filing a chapter 13 bankruptcy petition, courts in the Tenth Circuit assess the "totality of the circumstances," including the following factors:

9

> (1) the nature of the debt, including the question of whether the debt would be nondischargeable in a Chapter 7 proceeding; (2) the timing of the petition; (3) how the debt arose; (4) the debtor's motive in filing the petition; (5) how the debtor's actions affected creditors; (6) the debtor's treatment of creditors both before and after the petition was filed; and (7) whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Plese*, 661 B.R. at 159. "Not all factors are applicable in every case. And, notwithstanding the factors, the overall governing framework remains the totality of the circumstances." *Id.* (internal quotation marks omitted). Here, the factors and circumstances clearly weigh in favor of dismissal.

34. With respect to factor one, much of the contingent liability that Debtors may owe in connection with Gaia's Pending Claims would likely be exempt from discharge in a chapter 7 case, as a large portion of the value of Gaia's Pending Claims arises from Gaia's defamation claim against Mr. Goode. Debts based on "willful and malicious injury" may be exempt from discharge pursuant to 11 U.S.C. § 523(a)(6) (a provision inapplicable to discharge orders issued under 11 U.S.C. § 1328(a)), and courts have found that defamation claims can satisfy that standard. *See, e.g.*, *Bizub v. Paterson (In re Paterson)*, No. 10-35734 ABC, 2012 Bankr. LEXIS 2046, at \*16 (Bankr. D. Colo. May 9, 2012) ("Debtor's 'motivation to ruin' Creditor [established in state court action for defamation and other torts] classically fits within the Supreme Court's definition that a debt is nondischargeable under § 523(a)(6) if it results from a 'deliberate or intentional injury.'") (citing *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)).

35. With respect to factor two, the Petition was filed just two months after the District Court adopted the Judgment, further supporting a finding that the Petition was not filed in good faith. *See* Order Adopting Recommendation of U.S. Magistrate Judge, Gaia Litigation (Aug. 14, 2025) [ECF No. 491].

36.     Factors four through six also support dismissal, as the circumstances suggest that this bankruptcy case was filed as part of the Debtors' efforts to delay Gaia's prosecution of Gaia's Pending Claims, and to escape liability on the Judgment, all while benefiting from the protections of the automatic stay (and seeking the same protection for non-debtor GES).  *See* Debtors' Motion to Extend Stay [ECF No. 15].

37.     Finally, as to factor seven, the Debtors have not been forthcoming with the bankruptcy court and creditors for the reasons set forth above.  *See supra* ¶¶ 24-27.

**WHEREFORE**, for the reasons set forth herein and in the Trustee Objection, the Gaia Creditors hereby request that the Court deny confirmation of the Debtors' Second Amended Plan and dismiss this chapter 13 case.

Dated:   March 26, 2026
      Centennial, CO

**MERRICK SHANER & BERNSTEIN, LLC**

By: */s/  Joseph T. Bernstein*
    Joseph T. Bernstein
    6300 S. Syracuse Wy.
    Ste. 220
    Centennial, CO 80111
    T: 303-831-9400
    jtb@msbfirm.com

    *Attorneys for Gaia, Inc. and*
    *the Gaia Judgment Creditors*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above *Joinder to Chapter 13 Trustee's Objection to Confirmation of Second Amended Chapter 13 Plan and Motion to Dismiss Chapter 13 Bankruptcy Case* was placed in the U.S. Mail, postage prepaid, or delivered electronically via the Court's Electronic Case Filing system, on March 26, 2026, addressed as follows:

***Debtors***
James Corey Goode and Stacy Hartman Goode
6525 Gunpark Dr
# 370-227
Boulder, CO 80301

***Debtors' Bankruptcy Attorney***
Nicholas Craig Horvath
The Horvath Law Firm, LLC
VIA CM/ECF

***Debtors' Attorney in Gaia Litigation***
Valerie Ann Yanaros
Yanaros Law, P.C.
8300 Douglas Avenue Suite 800
Dallas, TX 75225

***Chapter 13 Trustee***
Adam M Goodman
VIA CM/ECF

Dated:   March 26, 2026
     Centennial, CO

**MERRICK SHANER & BERNSTEIN, LLC**

By: */s/  Joseph T. Bernstein*
    Joseph T. Bernstein
    6300 S. Syracuse Wy.
    Ste. 220
    Centennial, CO 80111
    T: 303-831-9400
    jtb@msbfirm.com

    *Attorneys for Gaia, Inc. and*
    *the Gaia Judgment Creditors*